IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHERYL A. BOYET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL CASE NO. 03-758-PMF |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**FRAZIER, Magistrate Judge:**

Plaintiff, Cheryl A. Boyet, seeks judicial review of a final decision of the Commissioner of Social Security denying her applications for disability benefits and supplemental security income. An Administrative Law Judge (ALJ) denied Boyet's applications after finding that she was not disabled. That decision became final when the Appeals Council declined to review the ALJ's decision. Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The

Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id*.

The ALJ evaluated plaintiff's application through Step 5 of the sequential evaluation and decided that plaintiff has fibromyalgia, costochondritis, depression and a history of posttraumatic stress disorder. While these impairments are severe, they do not meet or equal a listed impairment. The ALJ decided that, despite her impairments, plaintiff can lift and carry up to 25 pounds frequently and up to 50 pounds occasionally. She can sit, stand or walk for up to six hours in an eight-hour workday but must work in a low stress environment. She is not disabled because she can return to her past work as a maid and can perform a significant number of other jobs in the national economy (R. 13-19).

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer

to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

## I.     Residual Functional Capacity Assessment

Plaintiff argues that the ALJ's residual functional capacity assessment is not valid because important evidence describing her physical and mental limitations was disregarded. Defendant argues that this aspect of the ALJ's decision is supported by substantial evidence.

<u>Mental Limitations</u>. At the evidentiary hearing, plaintiff described mood swings and crying spells and said her ability to concentrate was impaired (R. 51-53). The ALJ questioned a vocational expert regarding the job prospects for a hypothetical individual limited to low-stress tasks and minimal contact with the general public (R. 59-61). At the conclusion of the evidentiary hearing, plaintiff requested a psychological evaluation (R. 64). The request was granted and plaintiff was referred to Dr. Rudolph for an assessment of her mental status and personality.

Dr. Rudolph reviewed medical reports, conducted a clinical examination, and administered a personality inventory. He determine that plaintiff experienced a moderate degree of depression and had a past history of traumatic stress. Dr. Rudolph evaluated plaintiff's abilities to perform mental work-related activities and found that she had a good ability to remember locations and work-like procedures; a good ability to understand, remember and carry out short, simple instructions; and a fair ability to understand, remember and carry out detailed instructions. Her ability to maintain attention and concentrate for extended periods was fair, as was her ability to perform activities within a schedule, maintain regular attendance and be punctual. She had a good ability to work with or near others without being distracted by them and a good ability to make simple work-related decisions, and a fair ability to sustain an ordinary routine without special

supervision, complete a normal workday or workweek, or perform at a consistent pace. When Dr. Rudolph was asked which findings supported his assessment, he referred generally to her depression as well as her physical and medical limitations (R. 497).

Dr. Randolph also decided that plaintiff had a good ability to interact appropriately with the public, ask simple questions, request assistance, accept instructions, respond appropriately to criticism from supervisors, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. Her ability to recognize normal hazards and take appropriate precautions was fair, as was her ability to set goals or make plans independently of others. The form Dr. Randolph used in making these assessments described the term "fair" as the ability to perform the activity satisfactorily some of the time. No findings were listed to support these opinions and Dr. Randolph did not indicate that mental impairments affected plaintiff's ability to perform physical activities (R. 498).

The ALJ considered Dr. Randolph's report and summarized his clinical findings and diagnosis but did not address Dr. Randolph's assessment of plaintiff's mental ability to perform certain work-related functions. After evaluating the symptoms of plaintiff's depression and her history of traumatic stress in combination with her pain and fatigue, the ALJ found moderate limitations of activities of daily living; slight limitations of social functioning; and slight limitations of concentration, persistence or pace. She had no episodes of decompensation within the past year. The ALJ determined that plaintiff's depression limited her to work in a low-stress environment but that she was able to perform at least the mental requirements for unskilled work (R. 15-18).

Residual functional capacity is the most a person can do despite his or her limitations. 20 C.F.R. § 416.945(a). ALJs are not required to address every piece of evidence or testimony in the

record but the analysis must provide enough information to permit a glimpse into the reasoning behind the decision to deny benefits. Hence, ALJs may not ignore an entire line of evidence that is contrary to the findings. Rather, the analysis of the evidence must be articulated at some minimal level in order to permit informed review. *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001).

Plaintiff argues that the ALJ should confront those aspects of Dr. Rudolph's assessment that describe some of her mental skills as "fair" and should explain why those assessments were rejected. Because these aspects of Dr. Randolph's report do not significantly detract from the ALJ's finding that plaintiff retained the ability to perform the basic mental demands for unskilled work, further discussion is not necessary to permit evaluation of the ALJ's finding that plaintiff could return to her prior unskilled work as a maid. See Social Security Ruling 85-15. Because the finding that plaintiff could perform her prior work supports the ALJ's decision that plaintiff is not disabled, the Court is not persuaded that the ALJ should have discussed Dr. Rudolph's assessment in greater detail.

Physical Limitations. Plaintiff also challenges the ALJ's finding that she retained the physical ability to perform medium work despite pain and fatigue from fibromyalgia. She notes that the ALJ relied, in part, on the absence of objective evidence of persistent muscle weakness, muscle atrophy, swelling, or heat (R. 16). She suggests that the term "muscle weakness" correlates with her subjective symptoms of fatigue and notes that objective signs do not commonly occur with fibromyalgia because this disorder is generally characterized by widespread musculoskeletal pain, stiffness, paresthesia, nonrestorative sleep, and easy fatigability along with multiple tender points throughout the body. *Harrison's Principles of Internal Medicine* 2010 (15th Ed. 2001). Defendant argues that the record supports a finding that plaintiff's fibromyalgia is not severe enough to be disabling.

When ALJs evaluate symptoms, they consider all available evidence, including objective medical evidence. 20 C.F.R. §§ 404.1529(c); 416.929. When plaintiff described her condition, she reported a variety of symptoms, including muscle spasms and chest pain (R. 40, 49, 51, 53). Because the ALJ was obligated to evaluate all of plaintiff's symptoms in considering the extent to which her ailments limited her ability to perform work tasks, the Court is not persuaded that it was improper for the ALJ to consider - as one factor - the extent to which objective medical findings demonstrated intense and persistent symptoms.

Plaintiff also challenges the ALJ's inference from treatment records that her fibromyalgic symptoms were episodic and of "short duration" (R. 16). Plaintiff argues that she did not see a physician due to financial hardship. Defendant argues that the record logically supports a finding that plaintiff rarely saw a physician because of her fibromyalgia.

Plaintiff testified that office visits to her internist and the cost of prescription medications were covered by a local medical assistance program. She explained that she could not afford additional treatment due to financial hardship (R. 44-47). Treatment records show that plaintiff sought treatment for fibromyalgia since 1998 (R. 459). During the period she claimed to be disabled, she requested medication refills and reported symptoms in August and December, 2001, and in November, 2002 (R. 394, 398, 483, 490). The Court is not persuaded that the ALJ's evaluation of this evidence is improper.

## II.     Conclusion

The Commissioner's final decision denying Cheryl A. Boyet's applications for disability benefits and supplemental security income is AFFIRMED.

DATED:     September 29, 2005     .

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**